UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCAL 553, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

                              Petitioner,

                    -v.-

FRED SCHILDWACHTER & SONS, INC.,

                              Respondent.

24 Civ. 9421 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the motion for summary judgment of Petitioner Local 553, International Brotherhood of Teamsters ("Petitioner" or the "Union"), which seeks confirmation of Arbitrator James Paulsen's Decision and Order, dated February 13, 2024 (the "Award"), in accordance with Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  Respondent Fred Schildwachter & Sons, Inc. ("Respondent" or the "Employer") does not oppose confirmation of the Award or Petitioner's request for pre- and post-judgment interest, but does oppose Petitioner's concomitant request for attorneys' fees and costs.  For the reasons set forth in the remainder of this Opinion, the Court grants in part and denies in part Petitioner's motion.

## BACKGROUND[1]

### A.    Factual Background

### 1.    The Parties and the Collective Bargaining Agreement

Respondent is an employer, as defined by Section 2(2) of the LMRA, 29 U.S.C. § 152(2), which sells and delivers heating oil to residential and commercial customers in and around New York City.  (Pet. 56.1 ¶ 1).  Petitioner is a labor organization, as defined by Section 2(5) of the LMRA, 29 U.S.C. § 152(5), with its office at 265 West 14th Street, Suite 305, New York, New York 10011.  (*Id.* ¶ 2).  Petitioner is the collective bargaining representative of all drivers and maintenance employees employed by Respondent in the New York City area, as well as in Nassau and Suffolk Counties.  (*Id.* ¶ 3).

Petitioner and Respondent "have been parties to a consecutive series of three-year collective bargaining agreements known as the Fuel Oil Master Contract, which apply to [Respondent]'s drivers and maintenance employees, from at least 2003 through the present."  (Pet. 56.1 ¶ 4).  The most recent

---

[1]    This Opinion draws its facts from the Petition to Confirm an Arbitration Award ("Petition" (Dkt. #8)); Petitioner's Local Civil Rule 56.1 Statement of Material Facts ("Pet. 56.1" (Dkt. #14)); and Respondent's Civil Rule 56.1 Statement of Material Facts Response ("Resp. 56.1" (Dkt. #17)).  The Court cites to Respondent's Rule 56.1 Statement only when the response is in conflict with Petitioner's Rule 56.1 Statement.

As appropriate, the Court also relies on the Declaration of Jae W. Chun in Support of Petitioner's Motion for Summary Judgment, and the exhibits attached thereto ("Chun Decl., Ex [ ]" (Dkt. #13)), including the award at issue (the "Award" (Chun Decl., Ex. C)); Petitioner's Memorandum of Law in Support of Its Motion for Summary Judgment ("Pet. Br." (Dkt. #15)); Respondent's Memorandum of Law in Opposition to Petitioner's Motion for Summary Judgment ("Resp. Opp." (Dkt. #16)), and the exhibits attached thereto, including the Declaration of Samuel Samaro ("Samaro Decl." (Resp. Opp., Ex. 1)) and the Declaration of Peter Schildwachter ("Schildwachter Decl." (Resp. Opp., Ex. 2)); and Petitioner's Reply Memorandum of Law in Further Support of Its Motion ("Pet. Reply" (Dkt. #18)).

agreement's effective dates are December 16, 2022, through December 15, 2025 (the "CBA").  (*Id.*; Chun Decl., Ex. A).  In Section 35 of the CBA, Petitioner and Respondent agreed to submit all matters concerning the interpretation of the CBA to arbitration.  (Pet. 56.1 ¶ 5; Chun Decl., Ex. A at 7).  Section 35, which is entitled, "Arbitration," states:

> Should any difference or dispute arise during the life of this [CBA] regarding the meaning, interpretation, or application of any of the provisions of this agreement, or regarding any other grievance which may arise between the parties, which cannot be adjusted by the representatives of [the Union and the Employer], the same is to be submitted to arbitration.  Either party to the dispute may place the disputed issue in arbitration by request for arbitration in writing served upon the other party within ten (10) days from the last date of attempted negotiated settlement between the parties.  The dispute shall be submitted to an Arbitrator, who is mutually acceptable to the Union and the Employer, or in the event no mutually acceptable Arbitrator is selected, then it shall be submitted to the American Arbitration Association for resolution.  The decision of the Arbitrator shall be binding upon both parties.  The expenses of arbitration, if any, shall be shared equally by the parties.  Any employee who shall be required to attend or testify at a grievance meeting or arbitration hearing shall not suffer any loss in wages by reason thereof.  There shall be no strikes or lockouts or work stoppages of any nature whatsoever pending a decision during the term of the [CBA].

(Pet. 56.1 ¶ 5; Chun Decl., Ex. A at 7).  Further, Petitioner asserts that Sections 10, 11, and 12 of the CBA "prohibit the Employer from using non-bargaining unit employees to perform bargaining unit work" (Pet. 56.1 ¶ 6), and that "[a]ll driving and maintenance work are considered bargaining unit work" (*id.* ¶ 3).  Respondent counters that those provisions do not "collectively or separately prohibit non-unit members from delivering fuel oil under all

circumstances" (Resp. 56.1 ¶ 6); that "Section 11 specifically permits the delivery of non-unit employees under specified circumstances" (*id.*); and that not all driving is considered bargaining unit work (*id.* ¶ 3). Sections 10, 11, and 12 of the CBA respectively provide:

> SCOPE OF AGREEMENT. SECTION 10: Except as herein otherwise provided, it is the intention, understanding and agreement of the parties that the Employer's work within the categories covered by this agreement shall be performed by employees of the Employer employed under the terms of this agreement[;]
>
> WORK PROTECTION. SECTION 11: The Employer shall not contract out or subcontract to others work in any category covered by this [CBA], unless (a) all employees on the seniority list are fully employed, (b) the Employer has given the Union reasonable advance notice of the need for additional employees, and (c) Pension Fund contributions are made as required by Section 49. In the event that the Employer utilizes truckers in violation of this section, all employees on the seniority list who did not work and should have worked on the day or days that such violation occurred, shall be paid for that day or those days[; and]
>
> LETTER AND SPIRIT. SECTION 12: The Union and the Employer[ ] recognize that the maintenance of fair union standards and conditions of employment are in their mutual best interests and it is therefore agreed that the parties shall cooperate to maintain and enforce the letter and spirit of this [CBA] and to curb abuses and to prevent evasions of each and every part of the [CBA] including the sections relating to subcontracting.

(Chun Decl., Ex. A at 4; Pet. 56.1 ¶ 6).

## 2.    The Parties' Arbitral Disputes and the Award

In 2013, the Union filed for arbitration, alleging that the Employer was violating Sections 10, 11, and 12 of the then-effective CBA by using non-

bargaining unit employees to perform bargaining unit work.  On August 14, 2013, an arbitrator issued an award in favor of the Union and ordered the Employer to pay for an audit to determine the amount lost by the bargaining unit employees; to pay the employees the amount found in the audit; and to cease using its managers to perform bargaining unit work.  (Pet. 56.1 ¶¶ 7-8; Chun Decl., Ex. B).  The Employer does not dispute that this award was issued, but dismisses it as immaterial because (i) it was not confirmed by this (or any) Court, and (ii) it does not impact whether the Award now at issue should be confirmed.  (Resp. 56.1 ¶¶ 7-8).

On or about June 27, 2023, the Union filed another grievance against the Employer, alleging that the Employer was violating the CBA by using non-bargaining unit employees to perform "driving and/or maintenance work." (Pet. 56.1 ¶ 9).  The Employer does not dispute that a grievance was filed against it, but claims that "the issue of using non-bargaining unit employees to perform maintenance work was not submitted for consideration by the arbitrator."  (Resp. 56.1 ¶ 9 (citing Award 2)).  On or about August 29, 2023, the Union contacted the Employer about selecting a mutually acceptable arbitrator to hear the Union's grievance.  (Pet. 56.1 ¶ 10).  Because the parties could not agree on a mutually acceptable arbitrator, the Union submitted the dispute to the American Arbitration Association (the "AAA") on or about September 5, 2023.  (*Id.* ¶ 11).  The parties selected Arbitrator James Paulsen through the AAA's selection process.  (*Id.* ¶ 12).  After meeting with the parties and ordering them to submit briefs, Arbitrator Paulsen issued the Award on

5

February 13, 2024.  (*Id.* ¶¶ 13-14; *see generally* Award).  The Union asserts
that the Award was in its favor (Pet. 56.1 ¶ 14), but the Employer contends
that the Award "rejected much of what the Union requested, including a
remedy going back to 2015 and a cease-and-desist order" (Resp. 56.1 ¶ 14
(citing Award 11-12)).

The Award concludes by stating that Arbitrator Paulsen was "grant[ing]
the grievance with respect to the Employer breaching the [CBA] by using
managerial employees to make heating oil deliveries to its customers on any
and all occasions from December 16, 2022 to the present." (Award 12).  He
ordered the following remedies:

> [i] An audit of the period [from December 16, 2022, to
> the present] will be conducted by an auditor selected by
> the parties or by the Union if the parties fail to agree on
> the selection, and the audit shall be paid for by the
> Employer.  The Employer shall make its records
> available to the auditor, and the Employer shall
> cooperate fully with the audit.
>
> [ii] For each oil delivery handled by a manager, the
> Employer shall make the appropriate pension
> contribution as required by Section 49 [of the CBA].
>
> [iii] [For] each oil delivery handled by a manager, the
> Employer shall make whole the seniority list bargaining
> unit employees who were not "fully employed,"
> including regular and overtime hours if the bargaining
> unit employee could have worked and made the delivery
> given to the manager.  No backpay will be owed for a
> managerial assignment if the seniority list bargaining
> unit employees were fully employed on that date and,
> therefore, could not have performed the work in
> dispute.
>
> [iv] Before assigning any bargaining unit work to
> managers, the Employer shall provide the Union

6

> reasonable advance notice of the need for additional employees.
>
> [v] The Employer and Union shall meet and discuss their mutual best interests in the maintenance of fair union standards and conditions of employment. And,
>
> [vi] The Employer, upon request by the Union, at quarterly intervals, shall provide the Union copies of all job tickets for oil deliveries made in the last three months. If any oil deliveries were made by managers, the Employer shall remedy the contractual breach as set forth above.

(*Id.* at 12-14).

The Union claims that after the Award was issued, it arranged for an auditor to contact the Employer to conduct an audit of any amounts lost by bargaining unit employees resulting from violations of Sections 10, 11, and 12 of the CBA. (Pet. 56.1 ¶ 15; Chun Decl., Ex. D). The parties agree that no records have been sent to the auditor (Pet. 56.1 ¶ 16), but the Employer asserts that this was not the result of any refusal on its part to send such records (Resp. 56.1 ¶ 16). The Union also claims that the Employer "has not paid the amounts ordered [to be paid] in the [A]ward" (Pet. 56.1 ¶ 17), but the Employer maintains that "[n]o amounts are ordered to be paid in the [A]ward, other than pension contributions, which were paid on December 12, 2024 (Resp. 56.1 ¶ 17). Finally, the Union claims that the Employer continues to use non-bargaining unit employees to perform the work of the bargaining unit (Pet. 56.1 ¶ 18), while the Employer disputes this statement as conclusory and denies that it is performing bargaining unit work in violation of the CBA (Resp. 56.1

¶ 18).  The Employer has not moved to correct, vacate, or modify the Award.
(Pet. 56.1 ¶ 20).

**B.     Procedural Background**

Petitioner commenced this proceeding by filing its initial petition to
confirm the Award on December 10, 2024.  (Dkt. #1).  On December 13, 2024,
Petitioner filed an updated petition to confirm the Award, which is the operative
pleading in this action.  (Dkt. #8).  On December 20, 2024, this Court ordered
Petitioner to move for confirmation of the Award in the form of a motion for
summary judgment.  (Dkt. #10).  On January 16, 2025, Petitioner filed its
motion for summary judgment, memorandum of law in support thereof, Local
Civil Rule 56.1 statement, and the supporting declaration of Jae W. Chun and
the exhibits attached thereto.  (Dkt. #12-15).  On January 30, 2025,
Respondent filed its memorandum of law in opposition to the motion for
summary judgment, and its response to Petitioner's Local Civil Rule 56.1
statement.  (Dkt. #16-17).  On February 6, 2025, Petitioner filed its reply,
concluding briefing on the motion.  (Dkt. #18).

DISCUSSION

In its memorandum, Petitioner argues that (i) the Award must be
confirmed pursuant to the LMRA and the FAA; (ii) attorneys' fees and costs
relating to this Petition should be awarded to Petitioner; and (iii) pre- and post-
judgment interest on the amounts owed to Petitioner and its members
pursuant to the Award should be awarded.  (Pet. Br. 1-5).  Respondent
concededly "does not oppose confirmation of the Award," but "vehemently

8

opposes the request that Petitioner be awarded attorneys' fees and costs associated with this application." (Resp. Opp. 1).

## A.    Applicable Law

"Section 301 of the [LMRA] ... provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Assoc. Musicians of Greater N.Y.* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Harry Hoffman Printing, Inc.* v. *Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 612 (2d Cir. 1990); 29 U.S.C. § 185). Federal court review of arbitral awards is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am.* v. *Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015) (internal quotation marks and citation omitted). Because the LMRA "embodies a 'clear preference for the private resolution of labor disputes,'" *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers* v. *Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)), judicial review of arbitral awards in this context is "among the most deferential in the law," *id.* at 532. Here, Respondent purports not to contest confirmation of the Award, but only to oppose the request for attorneys' fees and costs.

"Ordinarily, attorney[s'] fees cannot be recovered in a federal action in the absence of statutory authority, and neither [§] 301 of the LMRA nor the Federal Arbitration Act provides for attorney[s'] fees in actions to confirm an

arbitration award." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Baroco Contracting Corp.*, No. 24 Civ. 1898 (DEH), 2024 WL 4519836, at *2 (S.D.N.Y. Oct. 17, 2024) (internal citations omitted). However, pursuant to "its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney[s'] fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Eisemann* v. *Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (quoting *F.D. Rich Co.* v. *United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). "In confirmation proceedings, 'the guiding principle has been stated as follows: [W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney[s'] fees and costs may properly be awarded.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *JB Squared Constr. Corp.*, No. 20 Civ. 2659 (KPF), 2020 WL 6825693, at *5 (S.D.N.Y. Nov. 19, 2020) (quoting *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman, Retraining, Educ. & Indus. Fund* v. *Mountaintop Cabinet Mfr. Corp.*, No. 11 Civ. 8075 (JMF), 2012 WL 3756279, at *4 (S.D.N.Y. Aug. 29, 2012) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *2 (S.D.N.Y. Feb. 3, 2009))); *accord Commodities & Mins. Enter. Ltd.* v. *CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 819 (2d Cir. 2022) (citing *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227* v. *BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).

**B.      Analysis**

As an initial matter, the Court confirms the Award.  The parties agreed in the CBA to resolve their disputes through arbitration, the Arbitrator issued the Award, and, indeed, Respondent does not oppose confirmation of the Award. (*See* Pet. 56.1 ¶¶ 4-5, 10-14, 20; Resp. Opp. 1).  Accordingly, the Court turns to Petitioner's arguments that (i) attorneys' fees and costs should be awarded and (ii) pre- and post- judgment interest should be awarded.  As explained in the remainder of this Opinion, the Court declines to grant attorneys' fees and costs but grants pre- and post-judgment interest.

**1.      The Court Declines to Grant Attorneys' Fees and Costs**

In arguing for attorneys' fees and costs relating to its Petition, Petitioner simply summarizes the remedies set forth by Arbitrator Paulsen in the Award and states that Respondent has "flouted the [Award] without justification." (Pet. Br. 3-4).  For its part, Respondent contends that Petitioner cannot demonstrate that "there are no factual disputes on the question of whether Respondent acted in bad faith or refused to abide by the [Award] without justification."  (Resp. Opp. 2 (citing Fed. R. Civ. P. 56(a))).  Because the "guiding principle" when considering attorneys' fees in confirmation proceedings is whether a party "refuses to abide by an arbitrator's decision without justification," *JB Squared Constr. Corp.*, 2020 WL 6825693, at *5, the Court examines Respondent's proffered justifications for its noncompliance with the Award.

11

*First*, and most notably, Respondent claims that it has never refused to submit records to the auditor but, rather, that Petitioner halted the process in order to discuss settlement without alerting Respondent when it considered those discussions to be over.  (Resp. Opp. 2).  In this regard, Respondent provides the following timeline:  Just over three months after the Award was issued, on May 22, 2024, the auditor chosen by Petitioner contacted Respondent to commence the audit.  (Samaro Decl. ¶ 6).  The week prior, counsel for Petitioner, Mr. Chun, had emailed counsel for Respondent, Mr. Samaro, stating: "Looking for a way to settle this matter w/o your client having to produce all those [records] and pay an auditor.  Let me know if you're free sometime next week.  In the middle of trial this week." (*Id.* ¶ 6).  On June 6, 2024, Mr. Chun and Mr. Samaro had the discussion proposed by Mr. Chun. (*Id.* ¶ 7).  Counsel discussed their views regarding the facts that would be established by the records and audit, and ultimately, Mr. Chun communicated that he would review the Award and speak with his client.  (*Id.*).  According to Mr. Samaro, Mr. Chun did not revert to Mr. Samaro on the issue.  (*Id.*). Instead, on June 25, 2024, Respondent's Vice President, Peter Schildwachter, and Petitioner's Secretary Treasurer, Demos Demopoulos, spoke on the telephone, and agreed to meet to discuss settlement of the case. (Schildwachter Decl. ¶ 8).  On the same date, Mr. Demopoulos emailed Mr. Schildwachter, attaching a list of purported instances of managers making deliveries in violation of the CBA and noting that he looked forward to meeting on July 30, 2024, to discuss settlement.  (*Id.*).  According to Mr. Schildwachter,

the list largely pertained to instances of managers loading trucks, rather than delivering oil, which was not the subject of the arbitration. (*Id.*). After rescheduling, Mr. Demopoulos and Mr. Schildwachter met on August 15, 2024. During that meeting, Mr. Schildwachter claims to have highlighted that the arbitration did not concern the loading of trucks, and that managers were not prohibited from making deliveries as long as certain conditions were met. (*Id.* ¶ 9). Mr. Schildwachter avers that it seemed as if Mr. Demopoulos was not aware of that at the time of the discussion; that this prevented a successful settlement discussion; and that Mr. Schildwachter "thought [he] might hear from [Mr. Demopoulos] again about this but never did." (*Id.*).

The facts summarized in the preceding paragraph do not amount to bad faith. Respondent justifies its noncompliance — *i.e.*, its failure to send the records to facilitate the audit — by arguing that "Petitioner postponed the audit in order to discuss settlement, Respondent participated in these discussions in good faith, remained (and remains) ready, willing and able to discuss settlement, and until this proceeding was initiated, was never told that the discussions were over." (Resp. Opp. 3). In its reply, Petitioner does not deny that settlement discussions were taking place, or that it failed to indicate to Respondent that those discussions had ended and the audit process should resume. (*See* Pet. Reply 4 (referring to the settlement discussions)). Accordingly, the Court finds this case to be distinguishable from those cited by Petitioner in support of its argument for attorneys' fees. (*See id.* at 2). For example, in *Trustees of New York City District Council of Carpenters Pension*

*Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educational & Industry Fund* v. *S&S Kings Corp.*, a sister court in this District awarded attorneys' fees and costs, but did so because the respondent had not complied with the award, and in failing to oppose the petition, the respondent had "offered no justification for its failure to do so."  No. 19 Civ. 1052 (RA), 2019 WL 4412705, at *4 (S.D.N.Y. Sept. 16, 2019).  *See also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *Robert S. Interiors, Inc.*, No. 22 Civ. 10419 (JHR), 2024 WL 3857930, at *1, 5-8 (S.D.N.Y. Aug. 19, 2024) (same).  Here, Respondent *has* opposed the Petition insofar as it requests attorneys' fees and costs.  While Respondent admits that it has not provided records to the auditor as required by the Award, it has provided justification for this omission — indeed, Respondent expressly states that it is willing to do so (Resp. Opp. 3) and that it will "certainly" make the required payments in the event that the audit concludes such payments are owed (*id.* at 4).  The Court therefore denies Petitioner's request for attorneys' fees and costs on the basis that Respondent has failed to turn over records in accordance with the Award, because it finds that Respondent has not "refuse[d] to abide by [Arbitrator Paulsen's] decision without justification," nor has it acted in "bad faith."  *See JB Squared Constr. Corp.*, 2020 WL 6825693, at *5.

  *Second*, Respondent claims that it made a pension contribution of $5,011.25 to Petitioner on December 12, 2024, which was the amount "its records reflected as owed for contributions to the pension fund associated with

manager deliveries." (Resp. Opp. 4). Petitioner argues that this payment demonstrates that Respondent actually disagrees with the Award and is acting in disregard of it. (Pet. Reply 4-5). According to Petitioner, the "'appropriate' pension contribution can be determined only after an audit of Respondent's records, which would show just how much bargaining unit work Respondent's managers did in the unit employees' stead." (*Id.* at 5). Petitioner maintains that Respondent should have challenged the Award if it disagreed with the pension contributions, and because it did not, attorneys' fees and costs should be granted. (*Id.*).

The Court finds these arguments to be of a piece with Petitioner's argument regarding the auditor records, and thus equally unavailing. It is undisputed that the records have not been provided to the auditor, and in making its argument as to the pension contributions, Petitioner concedes that further payments should not be made until the audit determines what amount is owed. Because Respondent has offered a justification for its noncompliance up to this point, and has averred that it will turn over the necessary records and make any payments determined to be owed by the audit, the Court does not find an award of attorneys' fees and costs to be appropriate at this juncture.

In the remainder of its opposition, Respondent explains that:

> (i)     It has not failed to make drivers whole, because "there were no lost work opportunities," and "if there were, the incidents were few and the sums involved negligible"; it promises, however, that "[i]f the audit concludes that drivers are owed

money, Respondent will certainly make the
drivers whole";

(ii)    It has acted in accordance with the Award when
it needed additional drivers, by communicating
such need to Petitioner, but Petitioner failed to act
in response;

(iii)   It has not conferred with Petitioner to discuss
their "mutual best interests in the maintenance
of fair union standards and conditions of
employment," as required by the Award, but
Petitioner "has never attempted to schedule" a
meeting of this kind; and

(iv)    It has not provided quarterly job tickets, but
again, Petitioner has not made a request for them.

(Resp. Opp. 4-5). Petitioner does not address any of these claims in its reply,

and none of these issues disturbs the Court's conclusion that Respondent has

not acted in bad faith or refused to abide by the Award without justification. In

the Court's view, the next step in the dispute between the parties is for

Respondent to turn the records over to the auditor, as Respondent says it is

willing to do.

### 2.    The Court Awards Pre- and Post-Judgment Interest

#### a.    Pre-Judgment Interest

Petitioner also seeks pre-judgment interest. (Petition 6; Pet. Br. 4-5).

"Post-award, prejudgment interest is generally awarded at the discretion of the

district court, and there is a presumption in favor of awarding such interest."

*In re Arb. Between Westchester Fire Ins. Co.* v. *Massamont Ins. Agency, Inc.*, 420

F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (citing *In re Waterside Ocean Navigation*

*Co.* v. *Int'l Navigation, Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984); *Irving R.*

*Boody & Co.* v. *Win Holdings Int'l, Inc.*, 213 F. Supp. 2d 378, 383 (S.D.N.Y. 2002)).  "New York law provides for prejudgment interest running from the date of an arbitration award until the entry of final judgment."  *Finger Lakes Bottling Co.* v. *Coors Brewing Co.*, 748 F. Supp. 2d 286, 292 (S.D.N.Y. 2010) (citing N.Y. C.P.L.R. § 5002) (collecting cases).

In accordance with the presumption in favor of pre-judgment interest, and recognizing that Respondent does not oppose an award of pre-judgment interest, the Court "set[s] the interest rate at 9%," as is "the common practice among the courts of this Circuit."  *N.Y.C. Dist. Council of Carpenters Pension Fund* v. *E. Millenium Const., Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003); *see also N.Y.C. Dist. Council of Carpenters* v. *Metro Furniture Servs. LLC*, No. 11 Civ. 7074 (HB), 2012 WL 4492384, at *3 (S.D.N.Y. Sept. 28, 2012) ("[T]he common practice among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." (citing N.Y. C.P.L.R. §§ 5001-5004)).  Accordingly, the Court grants pre-judgment interest at a rate of 9% annually from the date of the Award, February 13, 2024, to the date of the entry of judgment in this case.

### b.    Post-Judgment Interest

Petitioner also seeks post-judgment interest.  (Petition 7; Pet. Br. 4-5).  "Section 1961 of Title 28 establishes the rate of interest that is to be paid 'on any money judgment in a civil case recovered in a district court,' linking that rate to the rate of interest the government pays on money it borrows by means

of Treasury bills." *Jones* v. *UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (quoting 28 U.S.C. § 1961(a)).  The Second Circuit has held that under Section 1961, awards of post-judgment interest are mandatory.  *See Cappiello* v. *ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases).  Under 9 U.S.C. § 13, a judgment entered on a motion to confirm an arbitral award has "the same force and effect, in all respects, as … a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13(c).  Therefore, the Court grants Petitioner's request for interest to accrue at the statutory rate from the date judgment is entered until Respondent satisfies its payment obligations.

## CONCLUSION

For the foregoing reasons, the Award is CONFIRMED and Respondent is ORDERED to comply with the Award.  The Court also awards pre-judgment interest at a rate of 9% annually from the date of the Award, February 13, 2024, to the date of the entry of judgment in this case, with such interest to be calculated after the audit is completed.  Post-judgment interest will accrue at the statutory rate under 28 U.S.C. § 1961.  Petitioner's request for attorneys' fees and costs is DENIED.  The Clerk of Court is DIRECTED to enter judgment in favor of Petitioner as specified in this Opinion, terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    August 18, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

18